UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re

ORDWAY RESEARCH INSTITUTE, INC.,

Debtor.

Chapter 11
Case No. 11-11322

---

## STIPULATION REGARDING DEBTOR'S CONTINUED USE
## OF CASH COLLATERAL AND OBTAINING DIP FINANCING

This Stipulation Regarding Debtor's Continued Use of Cash Collateral and Obtaining

DIP Financing (the "Stipulation") is made as of the 28th day of April 2011, by and between

Ordway Research Institute, Inc. ("Debtor") and Key Bank National Association ("Lender" or

"Bank").

### WITNESSETH:

A.      WHEREAS, on or about April 28, 2011 (the "Petition Date"), Debtor filed a

voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code").  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor

remains in possession of its assets and is operating its business as debtor-in-possession.

B.      WHEREAS, Lender heretofore has provided various loans, extensions of credit,

advances, and other credit facilities to Debtor, as evidenced by numerous loan and credit

agreements, security agreements, mortgages, notes, guarantees, and other documents, all of

which were executed from time to time (collectively the "Prior Loan Agreements").

C.      WHEREAS, as of the Petition Date, among the various credit facilities and

accommodations, Debtor is obligated and indebted to Lender as evidenced, *inter alia,* by the

following instruments:

(1)    A $1,000,000.00 Promissory Note issued by Debtor to Key Bank dated
       June 30, 2010;

(2)    A $179,424.00 Promissory Note issued by Debtor to Key Bank dated July
       10, 2008; and

(3)    A $500,000.00 Promissory Note issued by Debtor to Key Bank dated
       May 8, 2008.

D.    WHEREAS, all of the above-referenced prepetition loans (collectively the "Prepetition Loans") are secured, *inter alia,* by all of Debtor's existing and future prepetition inventory, goods, work in process, accounts, accounts receivable, contract rights, investment property, money, furnishings, fixtures, equipment, and general intangibles, together with all proceeds and products derived therefrom, as are more particularly set forth and described in the various Prior Loan Agreements (the "Prepetition Collateral").

E.    WHEREAS, Lender asserts that its security interest in the Prepetition Collateral was duly perfected and constitutes a valid first lien and encumbrance (subject only to certain purchase money security interests in prepetition equipment or any applicable intercreditor agreements).

F.    WHEREAS, Debtor asserts that the prepetition accounts receivable, which constitutes a portion of the Prepetition Collateral, had a stated book value of approximately $904,776.00 as of the Petition Date.

G.    WHEREAS, Debtor seeks to utilize the Prepetition Collateral and its prepetition and postpetition Cash Collateral[1] (as defined under §363(a) of the Bankruptcy Code) in the ordinary course of business, as provided for herein, and also to obtain postpetition financing

---

[1]    Including "Proceeds" as defined in § 9-306 of the Uniform Commercial Code, as adopted in the State of New York.

from the Lender, all for the purposes of paying ongoing wages, salaries, and other basic
necessary operating expenses are necessary to continue the operations of Debtor's business.
Debtor's ability to continue its business and to reorganize or to effect an orderly disposition of its
assets and business activities is dependent upon obtaining its utilization of Cash Collateral.

H.    WHEREAS, subject to this Court's approval, Debtor and Lender have agreed to
Debtor's continued use cash collateral and a postpetition DIP credit facility upon the terms and
conditions set forth herein.

## I. GENERAL PROVISIONS

1.1    All of the above recitals are incorporated herein and made a part hereof as if fully
rewritten.

1.2    Debtor hereby reaffirms and reacknowledges (a) all of the Prior Loan Agreements
heretofore executed and entered into by and between the Bank and Debtor are
binding upon Debtor, and the same shall be in full force and effect for so long as
Debtor is indebted to the Bank, and (b) Lender has filed certain UCC-1 financing
statements with the New York Secretary of State's Office in connection with its
security interest in the Prepetition Collateral. All terms and conditions of the
Prior Loan Agreements shall apply, except as specifically modified by the terms
of this Stipulation.

1.3    Debtor hereby acknowledges that all of the Prepetition Loans are payable in
accordance with their respective terms, pursuant to the Prior Loan Documents,
except as modified by applicable provisions of the Bankruptcy Code, and/or this
Stipulation, together with any order(s) of the Bankruptcy Court related to this
Stipulation.

1.4    To the extent applicable, Debtor confirms that it is unable to obtain secured or unsecured credit from any sources other than the Bank.

1.5    The effectiveness of this Stipulation, including the authorization of Debtor to (a) utilize the Prepetition Collateral, (b) utilize Cash Collateral, and (c) obtain Postpetition loans from the Lender, is conditioned upon this Court entering an Order approving this Stipulation.

## II. CASH COLLATERAL AND POSTPETITION LOANS

2.1    Subject to the terms and conditions as set forth hereunder, Lender consents to Debtor's use of the Prepetition Collateral, including the prepetition and postpetition Cash Collateral in accordance with the provisions of §363(c); provided, however, that Lender's consent for Debtor's usage of Cash Collateral shall be specifically conditioned upon and limited to the items and amounts set forth in Debtor's budget (the "Budget") which is attached hereto as **Exhibit A**; and further, provided that Debtor may deviate from the Budget to the extent of ten percent (10%) with regard to any line item. Lender may, in its sole discretion, consent to modifications of the Budget.

2.2    To the extent that, at any time, the Cash Collateral is insufficient or inadequate to allow for the payment of the expenses set forth in the Budget (including the 10% variance), the Lender, at its sole and absolute discretion, may from time to time, lend or re-lend to Debtor an amount not to exceed the principal amount of Three Hundred Thousand and 00/100 Dollars ($300,000.00) at any one time outstanding, pursuant to a Postpetition Revolving Credit Facility (the "Postpetition Loans"), as evidenced, in part, by a Postpetition Revolving Note, a

copy of which is attached hereto as **Exhibit B** and made a part hereof as if fully rewritten and incorporated herein (the "Postpetition Note").

2.3     Debtor's authorization to utilize Cash Collateral and/or obtain the Postpetition Loans, pursuant to this Stipulation shall expire on July 5, 2011 unless otherwise extended.

### III. REPLENISHMENT OF CASH COLLATERAL AND REPAYMENT OF POSTPETITION LOANS

3.1     All collected accounts receivable may, at the option of the Lender, (a) first be applied in reduction of interest and principal under the Postpetition Loans, and (b), if so applied, any excess thereof shall be deemed to be Cash Collateral, available for usage pursuant to this Stipulation and the applicable order of the Bankruptcy Court approving the Stipulation.

### IV. POSTPETITION LOANS, CROSS-COLLATERALIZATION, AND SUPER PRIORITY ADMINISTRATIVE CLAIM

4.1     As a condition to Debtor's usage of the Prepetition Collateral (including the prepetition and postpetition Cash Collateral), and as security for the postpetition Loans, pursuant to §361 of the Bankruptcy Code, Debtor hereby:

   a.     Grants, conveys, transfers, and assigns and sets over to Lender a continuing rollover and replacement lien in and to all of Debtor's postpetition assets, of any nature whatsoever, including, without limitation, all inventory, finished goods, accounts, accounts receivable, contract rights, investment property, money, general intangibles, choses in action, claims, insurance, intellectual property (including any trademarks, patents, copyrights, customer lists, business know-how or other

proprietary assets whether registered or unregistered) (collectively the "Postpetition Collateral") as security for any decrease in value of the Prepetition Collateral, including without limitation any diminution of Cash Collateral, and as security for the Postpetition Loans to the extent of any postpetition advances thereunder.

b.   As additional security for the financing provided to Debtor pursuant to the Postpetition Loans and for any diminution of Cash Collateral, Debtor grants, sets over, transfers, and assigns to the Lender a security interest and lien in the Debtor's real property located at 130 New Scotland Avenue, Albany, New York (the "Armory Property").

c.   Lender shall continue to preserve any and all statutory, common law, and/or contractual rights of setoff or offset with respect to any prepetition or postpetition funds, property, or deposits held, from time to time, by Lender.

d.   In the event of any diminution of cash collateral, Lender shall also have a priority administrative claim pursuant to §503(b) and 507(b) of the Bankruptcy Code to the extent of any such diminution.

4.2   As a condition to the Lender permitting the Debtor's use of Cash Collateral and providing the Postpetition Loans to Debtor, Debtor grants and consents to the Lender obtaining a superpriority administrative claim, pursuant to the provisions of §364(c)(1) of the Bankruptcy Code, to the extent of any postpetition advances under the Postpetition Loans; provided, however, that any fees payable to the

Office of the United States Trustee, pursuant to 28 U.S.C. §1930 shall have a first priority.

4.3     As a further condition of the Lender providing Postpetition Loans to Debtor, the Lender shall be afforded the protection of §364(e) of the Bankruptcy Code and any order approving this Stipulation shall make such a specific finding and decree.

4.4     The lien and security interest of Lender in the Prepetition Collateral and the Postpetition Collateral including, without limitation, the Armory Property, shall be deemed to be a valid and duly perfected first lien and encumbrance without the necessity or requirement that Lender file any financing statements, mortgages, or other documents of public record; provided, however, that Lender, at its option, may file such financing statements, mortgages, or other documents as it deems appropriate, and shall be granted a limited power of attorney on behalf of Debtor to do the same and to execute any and all documents or filings which may be otherwise required under non-applicable bankruptcy law in order to perfect Lender's Postpetition security interest in Debtor's assets. The Debtor further agrees, upon request of the Lender and at the Lender's option, to take any and all other actions as the Lender may determine to be necessary or useful for the attachment and perfection of the Lender's Postpetition security interest in Debtor's assets .

4.5     As additional adequate protection Debtor's use of Cash Collateral, Debtor shall make a monthly adequate protection payment to Lender in the amount of Seven

Thousand and 00/100 Dollars ($7,000.00) on or before the 10th day of each month during the term of this Stipulation and any extension thereof.

## V. FINANCIAL REPORTING

5.1   As a further condition of Debtor being able to utilize Cash Collateral and obtaining the Postpetition Loans, Debtor shall (a) submit to the Bank on not less than a weekly basis, a borrowing base certificate (the "Borrowing Certificate") which shall be certified as being true and accurate by an officer of Debtor.  The Borrowing Certificate shall reflect Debtor's starting balance of all accounts receivable and cash, together with the changes in the accounts receivable and cash for the reporting period.

5.2   In addition thereto, Debtor shall provide to the Bank a weekly reconciliation of all expenses, as compared to the Budget, for the same period.  To the extent required by the Bank, copies of any invoices, checks, or other underlying documentation with regard to each expenditure.

5.3   Debtor shall also provide to Lender each week a list of all new grants or contracts and the anticipated profit margins with respect to the same, including the anticipated dates for fulfillment of said grants or contracts.

5.4   Debtor shall also provide to Lender on a monthly basis, along with the financial reports of operations required by the Office of the United States Trustee, income/loss statement on an accrual basis for Postpetition activities, a complete accounts payable and accounts receivable aging, a copy of Debtor's check register and ledger, a reconciliation of its bank balance.

5.5     Without the prior consent of Lender, Debtor may only expend such amounts as are reflected on the Budget, allowing for a variance or deviation of ten percent (10%) for each line item; provided, however, that in the aggregate, the deviation shall not exceed ten percent (10%) for the period reflected on the Budget.

5.6     Debtor shall provide the Bank with proof of all required deposits and/or payments of payroll taxes, benefits (including health insurance, pension contributions, federal and state employee withholding taxes, FICA taxes, disability payments, and all other items which are required to be paid to governmental agencies and/or benefit plans).

## VI. COVENANTS, WARRANTIES AND REPRESENTATIONS

6.1     Subject to approval by the Bankruptcy Court, Debtor hereby affirms that it is authorized to enter into and execute this Stipulation and to perform all acts and/or obligations and performances as contemplated hereunder or herein at all appropriate corporate resolutions have been obtained authorizing Debtor to enter into this Stipulation, along with such further acts as may be required, and that the officer executing this Stipulation is empowered to do so on behalf of and bind Debtor under all the terms, conditions, and provisions herein and hereof.

6.2     Debtor shall not make any distributions, payments, transfer any assets or property of any kind or nature during the Postpetition operating period to any affiliates, parents, or other insiders, as defined in Section 101(31) of the Bankruptcy Code, except such expenses incurred in the ordinary course of business and specified and set forth in the Budget.

6.3     Debtor shall permit Lender or its agents to enter the business premises to review books and records, to make any copies or abstracts or extractions thereof as it may deem appropriate in its sole and absolute discretion; provided, however, to the extent practical, the Bank will provide advance notice of any such inspections or reviews.

6.4     Debtor shall, at all times, maintain casualty and liability insurance coverage, together with any other insurances required by law (i.e., workers' compensation) with respect to Debtor's prepetition and Postpetition assets, which insurance shall provide the same coverages and deductibles as existed prepetition with regard to claims for injury to persons or property. Lender shall be named as mortgagee on all such policies, and copies of all such policies, together with certificates of insurance, shall be provided to the Bank.

6.5     Debtor shall maintain all depository accounts at Lender's institution.

6.6     Debtor shall, at all times, operate in accordance with all laws, rules, regulations which may be applicable in each jurisdiction where it conducts business and maintains its assets, to keep in effect all permits or licenses which may be required for the operation of Debtor's business in connection therewith.

6.7     Debtor shall promptly commence any action necessary to avoid that certain mortgage recorded against the Armory Property by the Marty and Dorothy Silverman Foundation within 90 days prior to the Petition Date.  In the event that the Debtor or trustee does not commence or fails to prosecute such action, Lender shall have standing, without further Court Order, to commence and prosecute such action on behalf of the Debtor's estate, or to jointly prosecute such action

with the Debtor or trustee of Debtor's estate. Lender shall have standing to appear as a party in interest in any such action at any time, whether or not Lender is a named party to such action pursuant to the preceding sentence.

## VII. EVENTS OF DEFAULT

7.1    Upon the occurrence of an Event of Default (as specified in Paragraph 7.2 herein), Debtor's authorization to utilize Cash Collateral and obtain the Postpetition Loans shall be deemed to be immediately suspended without notice, except as provided for herein.

7.2    The following shall be deemed to constitute Events of Default:

    a.    Debtor's the failure to make any payment to Lender when due in accordance with this Stipulation;

    b.    Debtor's failure to adhere to and/or comply with any term, condition, provision, warranty, covenant, or representation contained in this Stipulation within five (5) days after notice of such default.

    c.    Upon the expiration of the term of this Stipulation, which is presently July 5, 2011, or any extension thereof.

    d.    Upon the dismissal of Debtor's Chapter 11 proceeding or a conversion of the case to a proceeding under Chapter 7 of the Bankruptcy Code.

    e.    The entry of an order of the Bankruptcy Court granting relief from the automatic stay imposed pursuant to §362 of the Bankruptcy Code to any entity other than Lender without Lender's consent.

    f.    The appointment of a trustee or examiner with respect to Debtor or Debtor's property.

g.    Upon the entry of any order of the Bankruptcy Court voiding or vacating any lien or security interest in favor of Lender with respect to any prepetition or postpetition agreements, loans, or transactions, or upon the failure of the Bankruptcy Court to enter an order providing Lender with protections, to the extent applicable, pursuant to §§363(m) and 364(e) of the Bankruptcy Code.

h.    Upon Debtor failing to operate its business within the postpetition period in such a manner that sustains losses, and accordingly, is unable to pay its postpetition obligations and debts when due and/or becomes administratively insolvent.

7.3    Upon the occurrence of any Event of Default (unless such Event of Default is specifically waived in writing by Lender), Lender may seek additional adequate protection and/or relief from the automatic stay pursuant to §362 on an expedited basis by giving three (3) business days prior written notice of a motion seeking such relief to (i) Debtor and its counsel, (ii) the United States Trustee, and (iii) any official committee of unsecured creditors by overnight mail and electronic mail.

## VIII. MISCELLANEOUS PROVISIONS

8.1    This Stipulation shall be effective upon approval of the Bankruptcy Court.

8.2    All notices required or permitted to be given hereunder shall be in writing and shall be deemed given when sent via e-mail (with hard copy to follow by mail), delivered personally or the day following deposit in a nationally known overnight delivery service, addressed as follows:

If to Lender:

Leslie A. Jones, Vice President
Key Bank
Mailcode: NY-31-66-0505
66 South Pearl Street
Albany, NY 12207
Leslie_a_jones@keybank.com

With a copy to:

Justin A. Heller, Esq.
Nolan & Heller, LLP
39 North Pearl Street
Albany, NY 12207
jheller@nolanandheller.com

If to Debtor, then to:

Ordway Research Institute, Inc.
150 New Scotland Avenue
Albany, NY 12208
Attn: Paul J. Davis, M.D.
pdavis@ordwayresearch.org

With a copy to:

LeClairRyan
290 Linden Oaks, Suite 310
Rochester, NY 14625
Attn: Gregory J. Mascitti, Esq.
Gregory.mascitti@leclairryan.com

If the United States Trustee:

Lisa M. Penpraze, Esq.
Assistant U.S. Trustee
74 Chapel Street, Suite 200
Albany, NY 12207
lisa.penpraze@usdoj.gov

8.3    Upon entry of an order by the Bankruptcy Court approving this Stipulation, the

terms and provisions hereof shall be binding upon the parties hereto, the United

States Trustee, all creditors and other parties-in-interest and their respective

successors and assigns, and upon any trustee subsequently appointed in this or any related proceeding.

8.4     This Stipulation contains the entire agreement between the parties hereto, and may be extended, supplemented, amended or otherwise changed only upon the express written consent of the parties hereto and approval thereof by the Bankruptcy Court.

8.5     Lender's authorization for Debtor to utilize Cash Collateral and obtain the Postpetition Loans expires on July 5, 2011, unless otherwise extended by Lender.

8.6     Any disputes arising under this Stipulation shall be heard and resolved by the Bankruptcy Court presiding over Debtor's chapter 11 proceeding.

Dated:  May 6, 2011

**LECLAIRRYAN**
Attorneys for Debtor and Debtor-In-Possession

By:     /s/ Gregory J. Mascitti
          Gregory J. Mascitti (NDNY Bar No. 509363)
290 Linden Oaks
Rochester, New York 14625
Tel.: 585-270-2100
Fax: 585-270-2179

**NOLAN & HELLER, LLP**
Attorneys for KeyBank

By:     /s/ Justin A. Heller
          Justin A. Heller
39 North Pearl Street
Albany, NY  12207
Tel.: 518-449-3300

EXHIBIT A

# GO FORWARD Cash Flow as of April 29

| OPERATIONS (For the Week Ending) | Week 1 29-Apr-11 Forecast | Week 2 06-May-11 Forecast | Week 3 13-May-11 Forecast | Week 4 20-May-11 Forecast | Week 5 27-May-11 Forecast | Week 6 03-Jun-11 Forecast | Week 7 10-Jun-11 Forecast | Week 8 17-Jun-11 Forecast | Week 9 24-Jun-11 Forecast | Week 10 01-Jul-11 Forecast | Week 11 08-Jul-11 Forecast | Week 12 15-Jul-11 Forecast | Week 13 22-Jul-11 Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 77,491 | 191 | 54,423 | 21,039 | (91,211) | (65,751) | (84,764) | (120,602) | (150,352) | 382 | (275,899) | (167,302) | 2,289 |
| **Cash Receipts** | | | | | | | | | | | | | |
| Grant Draws - Labor Resources | | 100,000 | | 102,000 | | 102,000 | | 100,000 | | 100,000 | | 100,000 | |
| Grant Draws - Expenses | | | | 31,000 | | 45,000 | | 16,000 | | | | | |
| BAA Grant | | 72,693 | | | | 116,000 | | | | | | | |
| DOD | | | | | | 15,275 | | | | | 67,000 | | |
| UNENY | | | | | | | | | | | | | |
| Pfizer | | | | | | | | | | 69,375 | 45,297 | | |
| Achaogen | | 31,866 | | | | 1,300 | - | | | | | | |
| RPI | | 2,744 | | | | | | | | | | | |
| Glaxco Smith Kline | | | 71,880 | | 23,960 | 95,840 | | | 45,999 | | | | |
| Polymedix | | 81,691 | | | | | | | | | | | |
| Bi-Par | | | | | | | | | | | | | |
| AstraZeneca | | | | | | 100,228 | | | 118,736 | | | 100,228 | |
| Merk | | | | | | | | | | | | | |
| Rudy Donation | | | | | | | | | | | | | |
| Scidose | | | 1,874 | | | | | | | | | | |
| Boston University | | | | | | | | | | | 1,800 | | |
| Duke University | | | | | | | 1,800 | | | | | | |
| BioVest | | | | | 15,000 | | | | | | | | |
| **Total Revenue** | - | 288,993 | 73,754 | 133,000 | 38,960 | 475,643 | 1,800 | 116,000 | 164,734 | 169,375 | 114,097 | 200,228 | - |
| **Fixed Cash Disb.- Operations:** | | | | | | | | | | | | | |
| Payroll 1 - Wages, Taxes and Withholdings | 50,000 | 148,562 | | 125,000 | | 125,000 | | 125,000 | | 125,000 | | | |
| Health, Dental, Life, Disability | | 6,043 | 15,000 | 6,000 | | 6,000 | | 6,000 | | 6,000 | | 12,769 | |
| Employee 401(k) | | | | | | | | | | | | | |
| Research Supplies - Emerging Infections | | | 40,000 | 40,000 | 20,000 | 40,000 | 10,000 | | | 40,000 | | | |
| BAA Expenses | | | 20,000 | 10,000 | 15,000 | 20,000 | | | | | | | |
| Merk | | 8,000 | 10,000 | | 10,000 | | | | | | | | |
| BioVest | | | 10,000 | 15,000 | | 10,000 | | | | | | | |
| Rent and Occupancy Costs (1st and 3rd Floor Only) does not include rent for May @$220,000 | | | | | | 220,000 | | | | 220,000 | | | |
| JC Jones | | | | 7,500 | 7,500 | 7,500 | 7,500 | 5,000 | 5,000 | 2,500 | 2,500 | 2,500 | 2,500 |
| Interest | | | | | | | | | | | | | |
| Debt | | | | | | | | | | | | | |
| Other Research supplies | 21,000 | | | | | | | | | | | | |
| Insurance- Property, Casualty | | | | | | 1,000 | | | | | | | |
| Compliance | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | | | 1,000 | |
| CDC Inspection Visit | | | | | | | | | | | | | |
| Payroll Fees | | 750 | | 750 | | 750 | | 750 | | 750 | | 750 | |
| Lawyers | 5,000 | 20,000 | | | | 8,000 | 8,000 | 8,000 | 8,000 | | | 2,500 | |
| HR Payment | | 3,000 | | | | 3,000 | | | 3,000 | 3,000 | 3,000 | | |
| **Total Payments** | 76,000 | 186,355 | 96,000 | 205,250 | 53,500 | 446,250 | 26,500 | 145,750 | 14,000 | 397,250 | 5,500 | 19,519 | 5,000 |
| **Weekly Profit/(Loss) before Debt Payments** | (76,000) | 102,638 | (22,246) | (72,250) | (14,540) | 29,393 | (24,700) | (29,750) | 150,734 | (227,875) | 108,597 | 180,709 | (5,000) |
| **Debt:** | | | | | | | | | | | | | |
| Key LOC - Interest | | | 7,000 | | | | 7,000 | | | | | 7,000 | |
| Key LTD Debt Service | | | | | | | | | | | | | |
| Ballston Spa - Debt Service $201k due | | | | | | | | | | | | | |
| Belton - Debt $45k + Interest Due 6/30/11 | | | | | | | | | | | | | |
| Silverlake Foundation - Armory Interest Only | | 4,138 | 4,138 | | | | 4,138 | | | 4,138 | | 4,138 | |
| Key - Capital Lease Obligations | | | | | | | | | | | | | |
| **Total Debt Payments** | - | (48,406) | (11,138) | - | - | (48,406) | (11,138) | - | - | (48,406) | - | (11,138) | - |
| **Weekly Profit/(Loss) after Debt Payments** | (76,000) | 54,232 | (33,384) | (72,250) | (14,540) | (19,013) | (35,838) | (29,750) | 150,734 | (276,281) | 108,597 | 169,571 | (5,000) |
| **Cumulative Profit/(Loss)** | | | (33,384) | (72,250) | (65,751) | (84,764) | (120,602) | (150,352) | 382 | (275,899) | (167,302) | 169,571 | (2,731) |
| US Trustee | 1,300 | | | | | | | | | | | | |
| Outstanding Checks | | | | | | | | | | 1,300 | | | |
| **Total Trustee Payments** | 1,300 | - | - | - | - | - | - | - | - | 1,300 | - | - | (5,000) |
| **Weekly Profit/(Loss) after Trustee Payments** | (77,300) | 54,232 | (33,384) | (72,250) | (14,540) | (19,013) | (35,838) | (29,750) | 150,734 | (275,899) | 108,597 | 169,571 | (2,731) |
| **Cumulative Profit/(Loss)** | 191 | 54,423 | 21,039 | (51,211) | (65,751) | (84,764) | (120,602) | (150,352) | 382 | (275,899) | (167,302) | 108,597 | 2,269 |

Assumptions:

# EXHIBIT B

**Secured Line-of-Credit**
**Promissory Note**

$300,000.00                                                          May 6, 2011

     **ORDWAY RESEARCH INSTITUTE, INC.**, a New York not for profit corporation with a place of business at 150 New Scotland Avenue, Albany, New York 12208 ("Borrower") shall pay to the order of **KEYBANK NATIONAL ASSOCIATION**, a national banking association, with offices at 66 South Pearl Street, Albany, New York 12207, and its successors and assigns ("Lender" or "KeyBank"), Three Hundred Thousand and 00/100ths ($300,000.00) Dollars, or so much thereof as may have been advanced under this Note, until July 5, 2011 ("Maturity" or the "Maturity Date"), subject to the terms and conditions hereof. On the Maturity Date, all outstanding unpaid principal, accrued interest and other sums owing under the Note shall be due and payable in full.

     Borrower is a debtor-in-possession pursuant to a voluntary petition for reorganization filed under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court"). Borrower has requested of Lender that Lender provide a secured, super-priority line of credit to fund, in part, Borrower's ongoing working capital needs, and Lender has agreed to provide such line of credit, pursuant and subject to the terms of this Note, that certain Stipulation Regarding Debtor's Continued Use of Cash Collateral and Obtaining DIP Financing (the "DIP Loan Agreement"), and such interim or final orders of the Bankruptcy Court approving the DIP Loan Agreement and the loan evidenced by this Note (the "DIP Loan Orders").

     This Note evidences the Postpetition Revolving Credit Facility as defined in the DIP Loan Agreement, the terms of which are incorporated herein by this reference as if fully set forth herein, but neither this reference to the Agreement nor any provision thereof shall impair the absolute and unconditional obligation of the Borrower to pay the principal, interest and any other amounts due under this Note as provided herein.

     This Note shall become effective upon entry of an order of the Bankruptcy Court approving the DIP Loan Agreement and this Note. Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Agreement.

     **Advances.** Provided that there are no events of default existing under this Note, and subject to the terms of this Note, the DIP Loan Agreement, the DIP Loan Orders and any other Loan Documents ("Loan Documents" means all documents evidencing, securing or executed in connection with this Note, including without limitation the DIP Loan Agreement and the DIP Loan Orders), Lender will, upon request from Borrower, make advances to or for the account of Borrower up to but not exceeding an aggregate unpaid principal amount outstanding at any one time equal to $300,000.00.

     Available advances under this Note will be made by Lender and used by Borrower only to fund the Borrower's ordinary working capital needs, as set forth in the budget attached to the DIP Loan Agreement as Exhibit "A," including any modifications or amendments to such budget

made with Lender's consent (the "Budget"), provided that Debtor may deviate from the Budget to the extent of ten percent (10%) with regard to any line item, in accordance with and subject to the terms and conditions of the DIP Loan Agreement and DIP Loan Orders.

At the option of the Lender, all collected accounts receivable shall be applied in reduction of any amounts due or outstanding under this Note. Subject to the terms of this Note and the other Loan Documents, Borrower may borrow, repay and reborrow up to the amount of this Note.

**Interest.** Borrower shall pay interest on the outstanding principal balance of this Note at the rate per annum equal to the Prime Rate plus 3.00%. "Prime Rate" means the rate per annum from time to time established by the Lender as Lender's Prime Rate, whether or not such rate is publicly announced; the Prime Rate may not be the lowest interest rate charged by the Lender for commercial or other extensions of credit. In the event of any change in the Prime Rate, the rate of interest applicable to Borrower's loans evidenced hereby shall be adjusted to immediately correspond with each such change. All computations of interest shall be made on the basis of a 360-day year and paid for the actual number of days elapsed.

**Payments.** Commencing June 1, 2011, and continuing on the 1st day of each consecutive month thereafter through the Maturity Date, Borrower shall pay interest then accrued and unpaid on the outstanding balance (if any) of this Note. At the Maturity Date or the earlier acceleration of this Note, Borrower shall pay the entire principal balance, plus all accrued and unpaid interest and fees. Borrower shall make all payments on this Note to Lender at its address stated above, or at such other place as the holder of this Note may designate. Borrower may make prepayments of principal at any time without premium or penalty, subject however, to any requirements and/or provisions of any agreement(s) for any derivative or hedging product, including, without limitation, interest rate or equity swaps, futures, options, caps, floors, collars, or forwards now or hereafter executed by and between Borrower and Lender with respect to this Note. For any payment due under this Note not made within ten (10) days after its due date, Borrower shall pay a late fee equal to the greater of five percent (5%) of the amount of the payment not made or $25.00. Lender shall apply all payments received on this Note to any unpaid late charges and other fees due hereinder, accrued and unpaid interest then due and owing, and the reduction of principal of this Note, in such order and in such amounts as Lender may determine from time to time. The sum or sums shown on Lender's records shall be rebuttably presumptive of the correct unpaid balances of principal and interest on this Note

**Default Rate.** At Lender's election, without notice or demand, Borrower shall pay interest at the rate per annum equal to five percent (5%) plus the applicable interest rate under this Note ("Default Rate") on the outstanding balance of this Note during the period that any Event of Default exists (as defined below). In no event, however, shall the interest rate on this Note exceed the highest rate permitted by law.

**Fees.** As a further condition of Lender's agreeing to make this line of credit available, Lender shall be entitled to a non-refundable fee in the total amount of $10,000.00, which shall be deemed fully earned by KeyBank upon the execution and delivery of this Note, and which shall be paid to KeyBank in immediately available funds contemporaneously with the execution and delivery of this Note. Contemporaneously with the execution and delivery of this Note to

Lender, the Borrower shall also pay, or cause to be paid, in hand to Lender, in immediately available funds, a non-refundable amount equal to Lender's attorney's fees and expenses incurred in connection with this Note and the Loan Documents.

**Collateral.** This Note is secured by, among other things, (i) a certain Mortgage dated as of even date herewith made by Borrower and in favor of Lender in the original principal sum of $300,000.00, encumbering real property and improvements thereon commonly known as 130 New Scotland Avenue, Albany, New York (the "Armory Property"), intended to be recorded in the Albany County Clerk's Office, (ii) a certain Assignment of Leases and Rents dated as of even date herewith made by Borrower and in favor of Lender encumbering the Armory Property, intended to be recorded in the Albany County Clerk's Office, and (iii) such other and further collateral and rights granted in favor of Lender as set forth in the DIP Loan Agreement.

**Warranties.** Borrower represents and warrants to the Lender (which representations and warranties will survive the delivery of the Note) that:

1.    Borrower is a not for profit corporation duly organized, validly existing and in good standing under the laws of the State of New York and has all requisite power and authority to own its property and to carry on its business as now being conducted, to execute and deliver this Note and the other Loan Documents, and to carry out the provisions and conditions of the Note and the Loan Documents. Borrower is duly qualified to do business and is in good standing in every jurisdiction where the failure to so qualify would have a material adverse effect.

2.    Borrower has full power, authority and legal right to incur the obligations provided for in, and to execute and deliver and to perform and observe the terms and provisions of this Note and the Loan Documents, and each of them has been duly executed and delivered by Borrower and has been authorized by all required action, and Borrower has obtained all requisite consents to the transactions contemplated thereby, and this Note and the Loan Documents constitute the legal, valid and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

3.    Neither the execution and delivery of this Note and the Loan Documents, nor the compliance by Borrower with the terms and conditions of this Note and the Loan Documents, nor the consummation of the transactions contemplated thereby, will conflict with or result in a breach of any governing documents of Borrower, or any of the terms, conditions or provisions of any agreement or instrument or any charter or other corporate restriction or law, regulation, rule or order of any governmental body or agency to which Borrower is now a party or is subject, or imposition of a lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of Borrower pursuant to the terms of any such agreement or instrument.

4.    No consent, approval, authorization or order of any court or governmental agency or body is required for the consummation by Borrower of the transactions contemplated by this Note and the Loan Documents, other than the Bankruptcy Court Order.

**Financial Reporting.** Borrower shall provide Lender with the Financial Reporting as set forth in the DIP Loan Agreement.

**Deposit Accounts**. So long as credit is available hereunder or until all principal of and

interest on this Note have been paid in full, the Borrower shall maintain with Lender, as its primary financial institution, corporate deposit, cash management and loan accounts, where applicable. At the option of Lender, all loan payments and fees will automatically be debited from the Borrower's primary operating account and all disbursements of Loan proceeds shall be made by the Lender's crediting of such disbursements directly into the appropriate Borrower's account.

**Set Off.**  The Borrower grants to the Lender a continuing lien on and security interest in any and all deposits or other sums at any time credited by or due from the Lender (or any of its banking or lending affiliates, or any bank acting as a participant under any loan arrangement between the Lender and the Borrower, or any third party acting on the Lender's behalf (collectively, the "Lender Affiliates")) to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of the Lender or any Lender Affiliate, whether for safekeeping or otherwise, or in transit to or from the Lender or any Lender Affiliate (regardless of the reason the Lender or Lender Affiliate had received the same or whether the Lender or Lender Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to the Lender or any Lender Affiliate and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower to the Lender or any Lender Affiliate at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender or any Lender Affiliate, subject to the requirements of any applicable bankruptcy law.

**Events of Default.**  The occurrence of any one or more of the following events shall constitute an Event of Default under this Note:

1.    If (a) the interest hereon or any fee shall not be paid in full punctually when due and payable or within ten days thereafter, or (b) the principal hereof shall not be paid in full punctually when due and payable.

2.    If Borrower or any Obligor fails to perform or observe any covenant or agreement (other than as referred to in (1) above) contained in this Note, the DIP Loan Agreement or in any other of the Loan Documents, and such failure remains unremedied for five (5) days after the Lender gives notice thereof to such Borrower or Obligor.

3.    If any representation, warranty or statement made in or pursuant to this Note or any Loan Document or any other material information furnished by Borrower or any Obligor to Lender or any other holder of this Note, shall be false or erroneous.

4.    If (a) any material provision, in the sole opinion of Lender, of this Note or any Loan Document shall at any time for any reason cease to be valid, binding and enforceable against Borrower; (b) the validity, binding effect or enforceability of this Note or any Loan Document against Borrower or any Obligor shall be contested by Borrower; (c) Borrower shall deny that it has any or further liability or obligation thereunder; or (d) any Loan Document shall be terminated, invalidated or set aside, or be declared ineffective or inoperative or in any way cease to give or provide to Lender the benefits purported to be created thereby.

6.    If Lender for any reason in good faith deems itself insecure with respect to

repayment of this Note.

**Remedies upon Default.** If any Event of Default shall occur, Lender may, at its election, and without demand or notice of any kind, do any one or more of the following:

1.     Declare all of the Borrower's obligations to Lender under this Note immediately due and payable, whereupon all unpaid principal, interest and fees in respect of this Note, together with all of Lender's costs, expenses and attorneys' fees related thereto, under the terms of this Note or otherwise, shall be immediately due and payable;

2.     Terminate any commitment to make further advances under this Note;

3.     Exercise any and all rights and remedies available to Lender under any applicable law;

4.     Exercise any and all rights and remedies granted to Lender under the terms of this Note and any of the other Loan Documents, subject to obtaining relief from the automatic stay, if necessary.

**Governing Law.** This Note shall be construed under the laws of the State of New York and any applicable federal laws. Time is of the essence in the payment of this Note. All grace periods in this Note and all other Loan Documents shall run concurrently.

**Notices.** All notices, requests, demands and other communications provided for hereunder shall be in writing and provided pursuant to the notice provisions of the DIP Loan Agreement.

**Binding Effect.** This Note shall be binding upon the Borrower and upon Borrower's respective heirs, successors, assigns and legal representatives, and shall inure to the benefit of the Lender and its successors, endorsees and assigns.

**Amendments.** Any amendment hereof must be in writing and signed by the party against whom enforcement is sought. Unenforceability of any provision hereof shall not affect the enforceability of any other provision. A photographic or other reproduction of this Note may be made by the Lender, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.

**No Waiver.** None of the following will be a course of dealing, estoppel, waiver, or implied amendment on which any party to this Note or any Loan Document may rely: (1) Lender's acceptance of one or more late or partial payments; (2) Lender's forbearance from exercising any right or remedy under this Note, or any document providing security for repayment of this Note; or (3) Lender's forbearance from exercising any right or remedy under this Note or any Loan Document on any one or more occasions. Lender's exercise of any rights or remedies or a part of a right or remedy on one or more occasions shall not preclude Lender from exercising the right or remedy at any other time. Lender's rights and remedies under this Note, the Loan Documents, and the law and in equity are cumulative to, but independent of, each

other.

**Costs, Expenses, Fees and Taxes.** Borrower agrees to pay on demand all costs and expenses of Lender, including but not limited to, (a) reasonable attorneys' fees and expenses, of Lender in connection with the preparation, negotiation and closing of the Loan Documents, (b) all fees due hereunder or in any of the Loan Documents, and (c) all costs and expenses, including reasonable attorneys' fees, in connection with the determination of Lender's lien priority in any collateral securing this Note, or the restructuring or enforcement of this Note or any Loan Document. In addition, Borrower shall pay any and all stamp and other taxes and fees payable or determined to be payable in connection with the execution and delivery of any Loan Document, and the other instruments and documents to be delivered hereunder, and agrees to hold Lender harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omission to pay such taxes or fees.

**Borrower Waivers.** Borrower waives presentment, demand, notice, protest, and all other demands and notices in connection with delivery, acceptance, performance, default, or enforcement of this Note.

**Jury Trial Waiver.** BORROWER AND LENDER EACH WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, BETWEEN LENDER AND BORROWER ARISING OUT OF, IN CONNECTION WITH, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR

Borrower:

**ORDWAY RESEARCH INSTITUTE, INC.**

By: _____

       Name:
       Title: