DEILY, MOONEY & GLASTETTER, LLP
Joann Sternheimer
8 Thurlow Terrace
Albany, NY 12203
(518) 436-0344

- and -

ARENT FOX LLP
Carol Connor Cohen
Dubrow L. Dubrow
1675 Broadway
New York, New York 10019
(212) 484-3900

*Attorneys for the Wells Fargo Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
      :
In re      :      Chapter 11
      :
ORDWAY RESEARCH INSTITUTE, INC.,      :      Case No. 11-11322-1
      :
Debtor.      :
      :
-----------------------------------------------------------x

### MOTION OF WELLS FARGO BANK, N.A. FOR AN ORDER VACATING AGREEMENT BETWEEN THE DEBTOR, KEYBANK NATIONAL ASSOCIATION AND WELLS FARGO BANK, N.A.

Wells Fargo Bank, N.A., solely in its capacity as bond registrar and trustee, as successor trustee to The Bank of New York Mellon (the "Trustee"), by and through its undersigned co-counsel, submits this motion ("Motion") for an order vacating the agreement between the Trustee, the above-captioned debtor (the "Debtor") and KeyBank National Association ("KeyBank"), reached on July 15, 2011, in connection with the Debtor's Motion for Entry of an Order Authorizing Increase to DIP Financing Credit Line, dated July 13, 2011 [Docket No. 87] (the "DIP Extension Motion"), and states as follows in support of its Motion:

NYC/600704.1

**Background**

1. As detailed in the Trustee's limited objection to the DIP Extension Motion (the "DIP Extension Objection")[1] and as further clarified on the record at the interim hearing on the DIP Extension Motion on July 15, 2011 (the "Interim Hearing"), the Trustee believes that the wind down of the Debtor's operations is premature and will seriously damage the value of the Debtor's estate, to the detriment of its creditors. To that end, at the Interim Hearing, the Trustee entered into discussions with the Debtor and KeyBank for a temporary, consensual resolution to the relief sought in the DIP Extension Motion that would allow the Debtor to continue operating from July 15, 2011 through at least August 5, 2011 (the "Interim Period"), and ensure the preservation of the Debtor's estate as a "going concern" through the Interim Period.

2. The Trustee believed that preservation of the Debtor's laboratories through the Interim Period would permit the Debtor, the Trustee, and the Center for Medical Service, Inc. ("CMS") to continue marketing the Debtor's operations on a "going concern" basis. A transfer of the operations on a "going concern" basis would result in the maximum value achievable for the space and would clearly be in the best interest for all creditors. In order to ensure the temporary continued operation of the Debtor's business, both KeyBank and the Trustee agreed to waive certain administrative payments in order to reduce the Debtor's postpetition operating costs.

3. Specifically, the Debtor, KeyBank, and the Trustee outlined on the record at the Interim Hearing an agreement, subject to entry of an order of this Court (the "Agreement"), pursuant to which Key Equipment Finance, Inc. agreed to waive lease payments of $101,592 that would otherwise be payable under the Debtor's proposed wind down budget (the "Wind Down

---

[1] A more detailed description of the role of the Trustee in the Debtor's cases and the relationship between the parties is outlined in the DIP Extension Objection.

2

Budget") during the Interim Period. The Trustee agreed to waive $140,000 of $175,000 in lease payments that would otherwise have been paid as an administrative expense claim for rent during the Interim Period under the Wind Down Budget, with the $140,000 that would have been paid as an administrative expense to be treated instead as an allowed general unsecured claim. (The Debtor and KeyBank agreed that the Trustee would be paid the remaining $35,000 of the lease payments provided for under the Wind Down Budget.) In exchange, the Debtor agreed that it would take no action during the Interim Period to destroy or transfer any of the microorganisms that are instrumental to the Debtor's research efforts, or take any further action that would reduce or limit the transferability of its space, business, and research efforts on a "going concern" basis. In the words of this Court:

> As I understand it, no hard and fast decisions until at least August 5th. That all options are on the table. . . . That we can go either route. So, there's no permanency to anything we do for the next two to three weeks.

(July 15 Transcript at pg 7.) A copy relevant pages of the July 15, 2011 Transcript is attached hereto as **Exhibit "A".**

4. After outlining the Agreement on the record, the parties advised the Court that they would submit an agreed proposed order to the Court, memorializing the terms of the agreement, for the Court's approval. (July 15 Transcript at pg 14. – See Exhibit "A" attached). No order has been submitted, because the parties have been unable to agree on its terms.

5. On July 20, 2011, just five days after the parties reached the Agreement, at least some of the Debtor's doctors unilaterally made the decision to relocate and transfer their research efforts – including government grants that had been awarded to the Debtor – to the University of Florida ("UF"), and notified other potential transferees that they were ceasing further discussions and negotiations with them. On information and belief, UF intends to move the research to Florida (after potentially a brief transition period), and therefore will have no long-term need for

3

the current space in which the Debtor operates. And UF may or may not elect to acquire some or all of the equipment used in conducting the research. The contemplated arrangement with UF is *not* in the best interests of the Debtor's creditors.

6. It is the Trustee's understanding from the Debtor, moreover, that even now, UF has yet to make an explicit offer, either orally or in writing. Nonetheless, as of July 20, 2011, the Debtor's employees formally ceased all discussions with competing candidates, and have so advised the competing candidates. As a result, these candidates are unwilling to discuss the Debtor's operations with any of the other parties in interest in this case.

7. All of these actions were taken with no notice to this Court or any of the parties in interest, much less Court approval (despite the fact that the doctors are making decisions with regard to property of the estate), and completely in contravention of the Agreement reached only a few days earlier. In fact, the Trustee and other parties in interest learned of these actions only *after* they had occurred.

8. Much of the Debtor's research is done pursuant to grants from the National Institute of Allergy and Infectious Diseases, an arm of the National Institutes of Health ("NIH"). Several days after learning of the Debtor's unilateral actions, the Trustee and other creditors were advised *for the first time* of an NIH deadline of July 20, 2011 by which the Debtor was required to designate a transferee institution for the grants (the "Grant Transfer Deadline"). The Debtor did not inform the Court – nor the Trustee and KeyBank – of the Grant Transfer Deadline when the parties negotiated and entered into the Agreement at the Interim Hearing. Indeed, Debtor's counsel has stated that he was himself unaware of this deadline.

9. The contemplated transfer of the grants and the resulting immediate forced wind-down of the Debtor's operations are contrary to the understanding of the parties when entering into the Agreement, and in contravention of the Agreement's purpose and intent. As a result, it is

no longer possible for the Debtor to perform its obligations under the Agreement.

**Relief Requested**

10. The Trustee requests entry of an order vacating the Agreement.

**Basis for Relief Requested**

I. **The Agreement Should be Vacated.**

11. Under New York law, a contract may be set aside on the traditional bases of fraudulent inducement, misrepresentation, mutual mistake, or duress. *C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 430 (S.D.N.Y. 2005); *Knoll v. Equinox Fitness Clubs*, 2003 WL 23018807, at *6 (S.D.N.Y. Dec. 22, 2003). "A mutual mistake occurs where both parties to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish their mutual intent." *In re Macrose Industries Corp.*, 186 B.R. 789, 799 (Bankr. E.D.N.Y. 1995) (quoting *Healy v. Rich Prods. Corp.*, 981 F.2d 68, 73 (2d Cir. 1992). Where a mutual mistake exists, the parties are entitled to rescind the contract. *Allen v. West Point-Pepperell, Inc.*, 945 F.2d 40, 46 (2d Cir. 1991).

12. As an initial matter, whether a contract even exists here is subject to considerable doubt. The parties indisputably contemplated that the Agreement would be memorialized in the form of an order to be entered by the Court, evidencing the Court's approval. And in fact, the parties commenced negotiations over the form of an order, but did not agree on the terms of a proposed order, and the negotiations have not been concluded. As a consequence, no such order has been submitted, much less entered, and the Agreement has not been approved by the Court.

13. As a general rule, parties who assent to an oral settlement made in open court are bound to that agreement. *See Monaghan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1283 (2d Cir.1996). However, "if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result

5

in the formation of a binding contract." *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Here, all of the parties contemplated that there would be a document memorializing the Agreement, and so advised the Court. In the absence of that document, there is no binding contract.[2]

14. Even if the facts were otherwise, however, the Agreement must be set aside, because it was based on both a mutual mistake of fact and misrepresentations, if not fraud.

15. This situation is the paradigm of a mutual mistake of fact. Certainly, the Debtor's representatives led the Trustee to believe at the Interim Hearing that the Debtor would be capable of performing its part of the bargain – to preserve the estate's property and engage in discussions with multiple competing candidates over the Interim Period, in order to negotiate an arrangement in the best interests of the estate and its creditors. Neither the Trustee nor (by his own admission) Debtor's counsel had any knowledge of a deadline that would preclude this course of action. Now, however, as a result of the Grant Transfer Deadline, and the Debtor's unilateral actions purportedly taken to meet that deadline, it is impossible for the Debtor to perform its obligations under the Agreement. As a result, the Trustee cannot realize the benefit it entered into the Agreement to achieve – the preservation of the Debtor's estate.

---

[2] The Second Circuit looks to four factors to determine whether parties are bound to an oral agreement that contemplates a later written agreement:

> (a) whether there has been an express reservation of the right not to be bound in the absence of a writing; (b) whether there has been partial performance of the contract; (c) whether all of the terms of the alleged contract have been agreed upon; and (d) whether the agreement at issue is the type of contract that is usually committed to writing.

*See, e.g., Adjustrite Sys., Inc. v. GAB Business Servs., Inc.*, 145 F.3d 543, 549 (2d Cir.1998) (citation omitted). Here, as noted in the text, the parties plainly contemplated that the agreement would be memorialized in writing. There has been no partial performance; indeed, under the circumstances, the Debtor's performance has become impossible. It is apparent from subsequent events that not all of the terms were agreed upon; among other things, the parties did not address a remedy for the Trustee if the Debtor was unable to perform its part of the bargain. And this is clearly the type of agreement that is usually committed to writing. Accordingly, all of the relevant factors militate in favor of the conclusion that the Agreement is not an enforceable contract.

16. Moreover, regardless of the knowledge (or lack thereof) of Debtor's counsel, it must be presumed that the Debtor's principals *were* aware of the Grant Transfer Deadline, and thus knew, or should have known, that the objective the Trustee sought to achieve in entering into the Agreement was illusory. At best, therefore, the Debtor misrepresented the facts, and at worst, induced the Trustee's acquiescence by fraud. The Agreement should also be set aside for this reason.

17. For all of the reasons set forth above, the Agreement should be set aside.

## II. Grounds Exist Under Rule 60(b) to Vacate the Agreement in Principle.

18. Rule 60(b) of the Federal Rules of Civil Procedures (the "Fed.R.Civ.P."), made applicable to the Agreement by Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).

19. Pursuant to Rule 60(b), even if the Agreement has been approved by an order of this Court – and it was not – it could be set aside on the basis of mistake, as discussed above.

## Conclusion

For all of the reasons set forth above, the Trustee respectfully requests entry of an Order vacating the Agreement.

Dated: August 2, 2011
       Albany, New York

Respectfully submitted,

*(signature)*
Joann Sternheimer
DEILY, MOONEY & GLASTETTER, LLP
8 Thurlow Terrace
Albany, NY 12203
(518) 436-0344

- and -

Carol Connor Cohen
David L. Dubrow
ARENT FOX LLP
1675 Broadway
New York, New York 10019
(212) 484-3900

*Attorneys for the Wells Fargo Bank, N.A.*

EXHIBIT "A'

```
                UNITED STATES BANKRUPTCY COURT
                 NORTHERN DISTRICT OF NEW YORK


IN RE:                              . Case No. 11-11322 (REL)
                                    .
ORDWAY RESEARCH INSTITUTE,          .
INC.,                               .
                                    . James T. Foley Courthouse
                                    . 445 Broadway
            Debtor.                 . Albany, New York 12207
                                    .
                                    . July 15, 2011
. . . . . . . . . . . . . . . . . . . 3:01 p.m.

                      TRANSCRIPT OF HEARING
           BEFORE HONORABLE ROBERT E. LITTLEFIELD, JR.
             UNITED STATES BANKRUPTCY COURT CHIEF JUDGE

APPEARANCES:

For the Debtor:              LeClairRyan
                             By: GREGORY MASCITTI, ESQ.
                             830 Third Avenue, Fifth Floor
                             New York, NY  10022

For U.S. Trustee:            Office of the U.S. Trustee
                             By: LISA PENPRAZE, AUST
                             74 Chapel Street, Suite 200
                             Albany, NY  12207

For Wells Fargo:             Deily, Mooney & Glastetter
                             By: JOANN STERNHEIMER, ESQ.
                             8 Thurlow Terrace
                             Albany, NY  12203

                             Arent Fox
                             By: CAROL C. COHEN, ESQ.
                             Washington, DC


Audio Operator:              Vicki Griffin


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com

(609) 586-2311    Fax No.  (609) 587-3599

**APPEARANCES (cont'd):**

| | |
|---|---|
| For Marty & Dorothy Silverman Foundation: | Iseman, Cunningham, Riester & Hyde, LLP<br>By: JAMES LAGIOS, ESQ.<br>9 Thurlow Terrace<br>Albany, NY 12203 |
| For Key Bank and Key Equipment Financing: | Nolan & Heller<br>By: JUSTIN A. HELLER, ESQ.<br>39 North Pearl Street<br>Albany, NY 12207 |

- - -

1  the $75,000.

2  MR. MASCITTI: Correct.

3  THE COURT: Okay.

4  MR. MASCITTI: Okay. If we had to go that would be
5  contamination, yes.

6  THE COURT: Okay.

7  MR. MASCITTI: And, I'm going to look to counsel to
8  see if I've left anything out.

9  MS. COHEN: I don't think so, but just to be -- we've
10 gone around and around in trying to make sure we all understand
11 the science well enough to understand what our agreement is.
12 And so, I just want to make clear our understanding that what
13 the commitment is we have, is that prior to August 5, Ordway
14 will take no action that would be irreparable in terms of the
15 research. That is, would not kill the microorganisms or
16 transfer them someplace else, away from here.

17 In other words, we would preserve the value of --

18 THE COURT: As I understand it, no hard and fast
19 decisions until at least August 5th. That all options are
20 still on the table.

21 MS. COHEN: Yes.

22 THE COURT: That we can go either route. So, there's
23 no permanency to anything we do for the next two to three
24 weeks.

25 MS. COHEN: That's correct, Your Honor.

1  the motion.
2  MR. MASCITTI: We need the order to -- we should put
3  an order in, I think, to reflect the agreements, with respect
4  to the claims.
5  THE COURT: That's fine. So, we can --
6  COURT CLERK: (Indiscernible) in terms of a status
7  conference on the 4th.
8  THE COURT: Ms. Cardinal suggests that we just have
9  order held -- interim order due, motion adjourned to the 5th at
10  --
11  MS. COHEN: The 4th.
12  THE COURT: I'm sorry, the 4th, and assuming
13  pessimistically, folks have to come, do we do that at ten or
14  eleven? What do we say works? Ten o'clock?
15  MR. MASCITTI: Ten a.m. is fine.
16  MS. COHEN: Ten would be fine.
17  THE COURT: Okay. Ten o'clock for you counsel?
18  MR. MASCITTI: Yes.
19  THE COURT: Then why don't we say ten o'clock and
20  then we'll fill in the blanks later on as to whether it's
21  telephonic, personal and what we're going to be doing since
22  this can, obviously, change very, very quickly. So, we'll
23  leave ourself the flexibility to do whatever we have to do to
24  try and solve wherever we are on that day.
25  MR. MASCITTI: Very good. Thank you, Your Honor.